# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# BRYSON CITY DIVISION
# CIVIL ACTION NO. 2:13-CV-00006-FDW

| | |
|---|---|
| MYRA CURTIS TEESATESKEE, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CAROLYN W. COLVIN,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | ORDER |

**THIS MATTER** is before the Court on Plaintiff Myra Curtis Teesateskee's Motion for Summary Judgment (Doc. No. 11) and Defendant Acting Commissioner of Social Security Carolyn W. Colvin's Motion for Summary Judgment. (Doc. No. 12). For the reasons set forth below, Plaintiff's Motion is DENIED, Defendant's Motion is GRANTED, and the ALJ's decision is AFFIRMED.

## I. BACKGROUND

Plaintiff seeks judicial review of an unfavorable decision on her application for social security benefits. Plaintiff filed applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI"), with an alleged onset date of September 19, 2009. (Tr. 306-12). The claims were initially denied and denied again upon reconsideration. (Tr. 182-210). Administrative Law Judge John S. Lamb ("the ALJ") held hearings on May 17, 2010, and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

October 22, 2010. Plaintiff and vocational experts ("VE") appeared and testified at both hearings. (Tr. 55-109). The ALJ issued a decision on January 25, 2011, denying Plaintiff's claims, but the Appeals Council subsequently vacated the decision and remanded it to the ALJ. (Tr. 139-51, 160-62). The ALJ held a third hearing on September 26, 2011, where Plaintiff and a VE appeared and testified. (Tr. 40-54).

On November 18, 2011, the ALJ issued the current decision finding that Plaintiff had not been disabled. (Tr. 26). The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, scoliosis, status post fusion from T8 to L4, and residual pain from a tibia fracture sustained in 2007, (Tr. 21), but that she did not have an impairment or a combination of impairments that met or equaled any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). (Tr. 26). Furthermore, the ALJ determined that Plaintiff retained the Residual Functional Capacity ("RFC") to perform modified sedentary work[2]. This included a sit/stand option[3] with the requirement of a cane for ambulating; no pushing or pulling with the upper right extremity; occasionally climbing, crouching, or crawling; and doing "detailed, but complex work." (Tr. 27). The ALJ determined, based on VE testimony, that Plaintiff could not perform her past relevant work as a billing clerk, taking inventory of stock and reordering, and an office assistant. (Tr. 30-31). However, the ALJ found through the VE's testimony that jobs existed in significant numbers in the national economy that she could perform, including a new account clerk, a printed circuit board assembler instector, and an ampoule sealer. (Tr. 31).

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasional lifting or carrying articles like docket files, ledgers, and small tools. 20 C.F.R. § § 404.1567(a), 416.967(a). Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Id. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. Id.
[3] "A sit/stand option is defined as the ability to stand/walk no more than 2 hours out of an 8 hour workday or sit for no more than 6 hours out of an 8 hour workday at the will of [Plaintiff]." (Tr. 27).

2

After the ALJ made a finding of no disability, Plaintiff made an appeal to the Appeals Council, who denied Plaintiff's request for review on August 10, 2012, rendering the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). Plaintiff appealed to this Court on January 16, 2013.

## II.     STANDARD OF REVIEW

Judicial review of a final decision of the Commissioner in social security cases is authorized pursuant to 42 U.S.C. § 405(g), and is limited to consideration of (1) whether substantial evidence supports the Commissioner's decision and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); Rhyne v. Astrue, 2011 WL 1239800 at *2 (W.D.N.C. March 30, 2011). District courts do not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). A reviewing court must uphold the decision of the Commissioner, even in instances where the reviewing court would have come to a different conclusion, so long as the Commissioner's decision is supported by substantial evidence. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982). In reviewing for substantial evidence, a court may not re-weigh conflicting evidence, make credibility determinations, or substitute its own judgment for that of the Commissioner. Craig, 76 F.3d at 589. The ALJ, and not the court, has the ultimate responsibility for weighing the evidence and resolving any conflicts. Hays, 907 F.2d at 1456.

## III.     ANALYSIS

Plaintiff presents two main arguments: (1) the ALJ erred in not considering Plaintiff's mental impairment as a severe impairment under 20 C.F.R., Part 404, Subpart P, Appendix 1 § 12.00(C); and (2) substantial evidence does not support the ALJ's decision because the ALJ failed to give controlling weight to Plaintiff's examining physician, Thomas V. Clayton M.D., physician's assistant John Tucker, P.A.C., and Karen Marcus, Psy.D.  (Doc. No. 11).

### A.  Severe Mental Impairment

The Court first addresses Plaintiff's argument that the ALJ erred in not considering Plaintiff's mental impairments as a severe.  "When a claimant alleges disability due to a mental condition, the ALJ must follow a special technique set forth in 20 C.F.R. § 404.1520a and the Listing of Impairment[s]."  McCall v. Astrue, 2011 WL 5974365 (W.D.N.C. November 29, 2011).  First, the ALJ is to evaluate the symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment.  Id.; 20 C.F.R. § 404.1520a(b).  Second, the ALJ must rate the degree of functional limitation resulting from the mental impairment in four functional areas (activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation) on a specific scale.  McCall, 2011 WL 5974365 at * 6; 20 C.F.R. §404.1520a(c)(3) and (4).  "The determination at the second step as to whether an impairment is 'severe' under the regulation is a de minimis test, intended to weed out clearly unmeritorious claims at an early stage."  Taylor v. Astrue, 2012 WL 909506 (W.D.N.C. March 16, 2012) (quoting Bowen v. Yuckert, 482 U.S. 137 (1987)).  The first three areas are to be rated according to a five-point scale (none, mild, moderate, marked, and extreme), and the last area is to be rated according to a four-point scale (none, one or two, three, or four or

more).  20 C.F.R. § 416.920a(c)(4).  If a claimant's degree of limitation is rated as none or mild in the first three areas and none in the last area, the impairment will generally be found to be non-severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities . . . ." 20 C.F.R. § 416.920a(d)(1).  The ALJ is required to document the application of this special technique in his decision.  20 C.F.R. § 416.920a(e)(2).  Plaintiff must first meet her own burden to produce evidence suggesting a mental impairment.  See Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Plaintiff argues that the ALJ committed reversible error by finding no severe mental impairments.  (Doc. No. 11).  An impairment is severe within the meaning of the Social Security regulations if it imposes significant limitations on the claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  In contrast, an impairment is not severe if it "has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1982).  The Commissioner argues that the ALJ made his decision based on the criteria found in section 12.00(C) of the Listing Impairments, 20 C.F.R., Part 404, Subpart P, Appendix, assessing each of the four broad functional areas "known as the paragraph B criteria." (Tr. 25).

In regards to the first area, activities of daily living, the ALJ found that Plaintiff had only mild limitations.  (Id.)  The ALJ found this limitation based on the consultative examinations of W. Jim Miller, Ph.D.; state agency consultative examiner Bonnie Gregory, M.D.; state agency consultative examiner Harry Perkins, Ph.D.; and Grace Barnes, Psy.D. (Id).  All four found limitations in daily living activities, such as being able to fold clothes, bathe, prepare meals, driving without assistance, shopping, and doing light house work.  (Id.).  Plaintiff does not

5

contest these limitations, so the ALJ's finding of mild limitations in daily living is supported by the substantial evidence.

The second area is social functioning, which the ALJ also found to be of mild limitation. Plaintiff argues that the ALJ should have considered Dr. Marcus's opinion because Dr. Marcus opined that Plaintiff has "limited but satisfactory abilities to understand and remember very short, simple instructions and get along with co-workers and peers without unduly distracting them or exhibiting behavioral extremes." (Tr. 23). Dr. Marcus also stated that Plaintiff "respond[ed] appropriately to criticism form supervisors [while] dealing with work stress." (Id.). However, the ALJ made the mild limitation finding by affording weight to the opinion of Dr. Gregory, who also found mild limitations in social functioning. (Tr. 25). Dr. Gregory made this finding based on Plaintiff's report that her impairments did not affect her ability to get along with others, (Tr. 431, 439), authority figures, (Tr. 440), talks on the phone daily, (Tr. 25), and goes to church regularly (Id.). Dr. Gregory's opinion also correlated with Dr. Barnes' opinion in that Plaintiff had no limitations in interacting and relating with others. (Id.). Because the ALJ found Dr. Gregory's opinion more consistent with the objective medical evidence of record than Dr. Marcus, the ALJ's finding of mild limitation is supported by substantial evidence.

The third functional area according to 12.00(C) is concentration, persistence, and pace, which the ALJ found to be of mild limitation. (Tr. 25). Plaintiff argues the ALJ didn't consider Dr. Marcus's opinion concerning Plaintiff's "limited but satisfactory abilities to understand and remember very short and simple instructions." (Tr. 23). However, The ALJ made this finding based on considering the opinions of Drs. Miller and Barnes. (Tr. 25). Dr. Miller opined that Plaintiff's thoughts were "relevant, coherent, and to the point," that Plaintiff denied any perceptual disturbance, was oriented, and that her working memory was at the low average

range. (Id.). Further, Dr. Miller pointed to Plaintiff's past experience as a nursing assistant, and the fact that she has no problem in managing her finances and that she has no indication of intellectual impairment, which goes towards her ability to understand instructions despite her attention being impaired due to her pain. (Tr. 26). This is also correlated by the opinion of Dr. Barnes, who stated the same ability in regards to following instructions. (Id.). The ALJ found both opinions to be consistent with the substantial evidence. Thus, the ALJ properly found, based on the substantial evidence, that Plaintiff had mild limitations in the area of concentration, persistence, and pace.

Finally, the fourth function area deals with episodes of decompensation. (Tr. 26). The ALJ found no episodes of decompensation, which the Plaintiff does not contest. (Id.). Thus, the fourth functional area does not need further analysis.

Notably, Plaintiff testified that she had never received, nor had been referred to, treatment by a mental health professional. Therefore, based on the substantial evidence, the ALJ properly found that Plaintiff did not suffer from a severe mental impairment as defined in the section 12.00(C) of the Listings.

### B. Controlling Weight to Treating Physician

The ALJ found that Plaintiff maintained the RFC to perform sedentary work, except that Plaintiff required a sit/stand option; could never use ropes, ladders, or scaffolds; could occasionally use ramps or stairs; could occasionally bend, stoop, crawl, crouch, and kneel; and must avoid exposure to hazards, such as dangerous machinery and heights (Tr. 31-32). Plaintiff argues the RFC is not supported by substantial evidence because the ALJ failed to give controlling weight to Plaintiff's examining physician, Thomas V. Clayton M.D., physician's assistant John Tucker, P.A.C., and the state agency psychological consultant, Karen Marcus, Psy.D. The Fourth Circuit has held that a treating physician's opinion need not be afforded

controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d at 178 (citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996)).

   **1. Dr. Clayton**

Dr. Clayton's assessment noted that Plaintiff

> is able to sit 15 minutes at a time and stand for 10 minutes at a time (both less 2 hours in an 8-hour workday). Every 30 minutes, during an 8-hour workday, [Plaintiff] needs a 5-miunte period in which she can walk around. Dr. Clayton opined that [Plaintiff] could lift at most 10 pounds occasionally.

(Tr. 23). The ALJ concluded that Dr. Clayton's assessment was a one-time assessment for Plaintiff because the other treatment records from Andrews Internal Medicine were signed by Mr. Tucker, indicating that Mr. Tucker performed "the majority" of the assessments. (Tr. 30; Plaintiff's Brief at 24). A physician who has treated claimant once is not a treating physician, because he cannot provide an "expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). Furthermore, the ALJ determined that Dr. Clayton's assessment is "unsupported by medically acceptable clinical and laboratory diagnostic techniques and inconsistent with the other substantial evidence in the record." (Id.) Thus, the ALJ gave limited weight to Dr. Clayton's opinion. (Id.) The ALJ gave "significant" weight to the opinions of State agency

8

medical examiners Robert Gardner, M.D., and Bertron Haywood, M.D., because their assessments were consistent with "the entire objective medical evidence of record and they are familiar with Social Security's laws and regulations." (Tr. 29). Dr. Gardner's assessment found that Plaintiff had the RFC to "perform light work."[4] (Id.) Furthermore, Dr. Gardner noted certain postural limitations as "never climbing ropes/ladders/scaffolds, occasionally stooping, crouching, and climbing ramps/stairs." (Id.). Therefore, because the opinions Dr. Gardner and Dr. Haywood are consistent with the objective medical evidence of record, substantial evidence supports the ALJ's decision and the ALJ did not err in not affording controlling weight to Dr. Clayton's assessment.

### 2. Mr. Tucker

In terms of Mr. Tucker's assessments of Plaintiff, the ALJ considered the observations of Mr. Tucker. (Tr. 30). However, only "acceptable medical sources" can provide medical opinions. See 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2). Furthermore, the Court has recognized that opinions such as Mr. Tuckers', that being a physician's assistant, "are considered 'other sources'[,] [and] [a]s such, the opinions are not entitled to controlling weight." Boyd v. Colvin, 2013 WL 4482923 (W.D.N.C. August 21, 2013) (quoting SSR 06-03p at *2). Moreover, Mr. Tucker submitted only one opinion after the alleged onset date and during the relevant time period, which was the document co-signed by Dr. Clayton and discussed above. Thus, the ALJ properly concluded that the opinion of Mr. Tucker should not be entitled to controlling weight.

In addition, Mr. Tucker noted that Plaintiff was disabled or unable to work (Tr. 713, 853, 861). This determination, however, is an issued reserved for the Commissioner. See 20 C.F.R. §§ 404.1527, 416.927; see also Pascoe v. Astrue, No. 11-226, 2012 WL 3528054, at *3

---

[4] Light work is defined as "the ability to lift 20 pounds on an occasional basis, lift 10 pounds [on] a frequent basis, stand/walk a total of 6 hours out of an 8-hour workday, and sit for about 6 hours out of an 8-hour workday." (Tr. 29 quoting 20 C.F.R. § 404.1567(b)).

9

(W.D.N.C. July 23, 2012) (holding that whether a claimant is disabled is an issued reserved for the ALJ). Therefore, although the ALJ did not expressly discuss these notations made by Mr. Tucker, Plaintiff was not harmed, and this Court should affirm the decision. See Shinseki v. Sanders, 556 U.S. 396, 408–09 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); Hanley v. Astrue, No. 11-488, 2012 WL 2804846, at *4 (W.D.N.C. July 10, 2012) ("even assuming that the ALJ did err, such error by the ALJ was harmless because the remand would not lead to a different result.") (quoting Dover v. Astrue, No. 11-120, 2012 WL 1416410, at *5 (W.D.N.C. Mar. 19, 2012)).

   3. **Dr. Marcus**

Finally, Plaintiff argues that the ALJ should have given controlling weight to the opinion of psychological consultant Dr. Marcus, and the ALJ's failure to do so and explain the reasons for denial of controlling weight constitutes reversible error. The ALJ must "always give good reasons in the notice of decision for the weight given to a treating sources opinion." Hull v. Astrue, 2012 WL 2529412 (W.D.N.C. 2012) (quoting 20 C.F.R. § 404.1527(c)(2)). Here, the ALJ considered Dr. Marcus's assessment when weighing the objective medical evidence of record. (Doc. No. 13). Dr. Marcus' psychological evaluation performed on April 21, 2010, stated that Plaintiff exhibited "poor working memory, would handle stress poorly, and would be hostile towards others." (Tr. 814, 817-18). Furthermore, Dr. Marcus concluded that Plaintiff likely had a learning disorder and would be unable to meet competitive standards in areas such as "completing a normal work week, performing at a consistent pace, responding appropriately to criticism, dealing with stress, would have serious difficulties interacting with the general public, responding to change, and carrying out short simple instructions." (Tr. 23). In regards to social

10

activities, Dr. Marcus found that Plaintiff attended church twice a week and "sometimes needed help putting on her pants and shoes." (Id.)

However, the ALJ noted that the evaluation by consultative examiner Dr. Barnes was most consistent with the medical evidence of record because Dr. Barnes determined that Plaintiff had "no impairment in her ability to understand, retain, follow instructions, relate to others, and tolerate day-to-day stressors." (Tr. 29). Furthermore, Dr. Barnes determined that Plaintiff had no limitation in her day-to-day activities because Dr. Barnes found that Plaintiff was able to dress and bathe with no assistance required, fold clothes, make the bed, drive without assistance, watches TV, reads, makes lunch, and occasionally cooks supper. (Tr. 30). It was because of this finding that the ALJ found that that Dr. Barnes' opinion should be entitled to significant weight, implicitly determining that Dr. Marcus's weight should be afforded little to no weight.

## IV. CONCLUSION

For the reasons set forth above, it is ordered that the ALJ'S decision is AFFIRMED. Plaintiff's Motion of Summary Judgment (Doc. No. 11) is DENIED. Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED. The Clerk of Court is respectfully directed to close the case.

IT IS SO ORDERED.

Signed: December 13, 2013

Frank D. Whitney
Chief United States District Judge